Elizabeth M. Varela
VARELA LAW FIRM PLLC
2601 Minnesota Ave, Suite 2
Billings, Montana 59101
Telephone: (406) 534-4872
E-Mail: liz@varelalawfirmpllc.com

*Attorneys for Plaintiff*

CLERK OF THE
DISTRICT COURT
TERRY HALPIN

FILED

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT,
## YELLOWSTONE COUNTY

| | |
|---|---|
| JENNIFER R. BARTON, as the Personal Representative of the Estate of Colin James Barton, deceased, and on behalf of the Heirs of Colin Barton, individually, and on behalf of her minor children, J.B. and P.B., <br><br> Plaintiff, <br><br> v. <br><br> ARROW STRIPING & MANUFACTURING, INC., SKIP-LINE, LLC f/k/a SKIP-LINE, INC. and SKIP-LINE ELECTRONICS, INC., and DOES 1 through 30, <br><br> Defendants. | CAUSE NO. **DV 20-0459** <br><br> JUDGE: **Jessica T. Fehr** <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, for her claims against Defendants, alleges and states as follows:

## NATURE OF THE ACTION

1.      This is an action to recover damages for the wrongful death of Colin James Barton

caused by design and manufacturing defects in a truck mounted grinder manufactured by the

Defendant Arrow Striping & Manufacturing Inc. and a timing system manufactured by Defendant

Skip-Line, LLC.   Decedent Barton was crushed when an under-carriage grinder box moved

without control command from the "out" to the "in" position while Mr. Barton was servicing the

grinder heads.

2.     Decedent Barton was born on November 27, 1982 in St. Paul, Minnesota. During childhood, Decedent Barton's family moved to the Hershey, Pennsylvania area where he met his wife, Jennifer. Upon graduation from high school, the young couple relocated to Colorado when Colin enlisted in the Army.  Decedent Barton was a decorated Sergeant in the Army and served four deployments over his 13 years of service. The couple soon became parents of J.B. and P.B.. Decedent Barton retired from the Army and used one of his skills as a mechanic to find employment at Kolbe Striping, Inc. ("Kolbe") in Castle Rock, Colorado.

3.     Decedent Colin Barton was 34 years old at the time of his death and left behind his wife of 16 years, Jennifer Barton, and their two minor children, J.B. (DOB 01/10/11) and P.B. (DOB 12/02/12).

4.     As a result of the wrongful death of Decedent Barton, Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton have suffered and will continue to suffer damages for the mental anguish and for the loss of Colin Barton's counsel, protection, aid, guidance, comfort, society, and support.

5.     As a result of the wrongful death of Decedent Barton, Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton have been deprived of the pecuniary benefit of Decedent Barton's industry, labor, and services. Mr. Barton's minor children J.B. and P.B. (a special needs child) have been deprived of Decedent Barton's essential and unique parenting skills, dedication to his family, and his special love, care and affection. Plaintiff Jennifer Barton, J.B. and P.B., as a surviving family and each of them individually, will experience net pecuniary loss that includes the economic value of Decedent Barton's employment income, military retirement income, and ordinary household services. They also suffer the loss of the two pillars that supported this family:

2

Decedent Barton will no longer fulfill his role providing economic support and household services, and Jennifer Barton will no longer be able to devote her care and attention to the minor children because she must become the economic support for the family. J.B. and P.B. have suffered the loss of both parents' unique parenting skills and affection.

## PARTIES

6.  On or about March 9, 2020, Jennifer R. Barton was duly appointed the Personal Representative of the Estate of Colin James Barton, deceased, by the District Court, El Paso County, Colorado, Case No. 2020PR30132.

7.  Plaintiff Jennifer Barton is the surviving spouse of Colin Barton and the mother of J.B. and P.B.

8.  J.B. is a minor and the child of Colin Barton and Jennifer Barton.

9.  P.B. is a minor and the child of Colin Barton and Jennifer Barton.

10.  Defendant Arrow Striping and Manufacturing, Inc. ("Arrow"), is a Montana Corporation with a principal place of business believed to be at 335 Orchard Lane, Billings, Montana 59101. Upon information and belief it may operate under the name Arrow Enterprise, Inc. Arrow may be served through its registered agent: Kymm Stark, 335 Orchard Lane, Billings, Montana 59103-1622 and at its principle place of business in Billings, Montana.

11.  Defendant Skip-Line, LLC f/k/a SKIP-LINE, INC. and SKIP-LINE ELECTRONICS, INC. ("Skip-Line") is a Texas limited liability company with a principal place of business located at 10514 N. McAlister Road, La Grande, Oregon 97850. On or about January 17, 2020, Skip-Line, Inc. filed Articles of Conversion, converting to Skip-Line, LLC. Upon information and belief it may have previously been known as Skip-Line Electronics, Inc. Skip-Line may be served through its registered agent: Corporation Service Company, 1127 Broadway

3

Street NE, Salem, Oregon 97301.

12.     Upon information and belief, the true names or capacities, whether individual, corporate, associated, affiliated, or otherwise of Defendant DOES 1 through 30, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Upon information and belief, each of the Defendants sued herein as a fictitious name is legally responsible in some manner for the events and happenings referred to herein, and Plaintiff will seek leave of Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to her.

13.     Defendants Arrow Striping and Manufacturing, Inc. and DOES 1 through 10, will hereinafter collectively be referred to as the "Grinder Truck Defendants."

14.     Upon information and belief, at all relevant times the Grinder Truck Defendants designed, manufactured, and sold grinder trucks, including Grinder Truck # 2372 which is the subject of this action (hereinafter the "Subject Grinder Truck").

15.     Defendants Skip-Line, LLC and DOES 11 through 20 will hereinafter collectively be referred to as the "Timing System Defendants."

16.     Upon information and belief, at all relevant times the Timing System Defendants designed, manufactured, and sold timing systems for grinder trucks, including the subject timing system installed on the Subject Grinder Truck at the time of the subject incident (hereinafter the "Subject Timing System").

17.     Pursuant to Mont. Code Ann. § 27-1-719, each of the Grinder Truck Defendants and the Timing System Defendants are "sellers," because they are a manufacturer, wholesaler and retailer.

4

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action and personal jurisdiction over each of the parties.

19.     The Court has specific jurisdiction over Defendant Arrow based on the facts and its incorporation under the laws of the State of Montana. At all relevant times Arrow was a Montana corporation with its principal place of business and its registered agent located at 335 Orchard Lane, Billings, Montana.

20.     The Court has specific jurisdiction over Defendant Skip-Line, LLC, which designed, manufactured, sold, and delivered its product into the Montana stream of commence. Upon information and belief, Skip-Line should reasonably anticipate being hailed into court in Montana for various reasons, including but not limited to the following:

   a.  Skip-Line delivered the Subject Timing System, and many other identical and/or substantially similar timing systems, to Defendant Arrow in Montana with full knowledge that Arrow was a Montana entity that was incorporating its product into Arrow products designed, manufactured and sold by a Montana corporation in Montana and elsewhere;

   b.  Skip-Line and Arrow entered into contracts in Montana with respect to Skip-Line timing systems, including the Subject Timing System;

   c.  Skip-Line engaged in communications regarding its timing systems that were directed at Montana entities and/or residents, that originated from Montana with Skip-Line's full knowledge, and/or that involved Montana entities and/or residents;

   d.  Skip-Line purposefully availed itself of the benefits of doing business in Montana by directing marketing efforts toward Montana businesses, and marketing and

selling its products in the State of Montana, including marketing and sale of timing systems to Arrow for incorporation into Arrow products;

e.  Skip-Line may have ongoing contractual warranty repair and regulatory recall responsibilities with respect to its products sold to Arrow in the State of Montana; and

f.  Skip-Line marketed and sold defective products within Montana, including the Subject Timing System.

21.  Plaintiff's claims are connected with or related to Skip-Line's contacts with Montana because the Subject Timing System was purchased in Montana, shipped by Skip-Line directly to Montana, sold by a Montana entity, used in Montana, and serviced in Montana. Other identical and substantially similar timing systems are also shipped to, purchased, sold in, used in, and/or serviced in Montana. There is little or no burden on Skip-Line in litigating this case in a Montana court.

22.  Venue is proper in Yellowstone County, Montana, under Mont. Code Ann. § 25-2-122 because of Arrow's residence in and registered agent location in Yellowstone County.

### GRINDER TRUCK #2372 AND ITS TIMING SYSTEM

23.  Decedent Barton was employed as a mechanic for Kolbe, a business that provides highway and road striping services. Kolbe's office, shop and yard are located at 650 Topeka Way, Castle Rock, Colorado.

24.  Kolbe owns and operates striping and grinding equipment for its business and maintains and repairs this equipment at its Topeka Way facility. One of the pieces of equipment used by Kolbe is Grinder Tuck #2372 (the "Subject Grinder Truck"). Grinder Truck #2372 is one of two grinder trucks that Kolbe purchased from Arrow.

6

25.    The Subject Grinder Truck consists of a 2015 Autocar Expeditor truck and cab, a John Deere auxiliary system diesel engine, an Arrow auxiliary grinder and vacuum system, a Skip-Line timing system (the "Subject Timing System"), and other component parts. The Subject Grinder Truck was designed, manufactured, and sold by Arrow and components of the grinder truck were acquired, assembled, and manufactured by Arrow. The Subject Timing System was designed, manufactured, and sold by Skip-Line and integrated into the Subject Grinder Truck by Arrow.

26.    A document entitled "*Owner's Manual Grinder Truck #2372*" was purportedly compiled by Arrow and delivered with the Subject Grinder Truck to Kolbe at the time of sale. The manual contains chapters on (1) Cab Controls: HMI & Keypads; (2) Electrical schematics; (3) Warning Lights: Arrow Board, Beacon, & Strobe Lights; (4) Timing System; (5) Intercom; (6) Hopper Fan Safety & Warnings; (7) Creep Drive; (8) Camera System; and (15) Power Plant. Chapters 9-14 are blank.

27.    The Arrow Owner's Manual has numerous deficiencies, including but not limited to the following:

   a. There are no sections of the manual explaining the operation, maintenance, repair, or troubleshooting of the edge line grinder boxes;

   b. There are no warnings provided regarding the crush and pinch hazards the edge line grinder boxes present when they move from the "out" to the "in" positions;

   c. There are no warnings regarding failures of the grinder truck's electrical system due to radio frequency, water/moisture penetration, or other dangerous conditions;

   d. The chapter on human machine interface and keypads provides only basic explanations of screen icons without instructions on operation, maintenance,

7

troubleshooting or warnings, and without addressing in any way the interface between the edge line grinder boxes and the controls;

e.  Among other deficiencies, the controls chapter does not: (i) identify program conditions that result in motion of the in/out movement of the grinder boxes; (ii) identify program conditions that result in energizing of the edge line rear box in/out movement; or (iii) identify program conditions that must be met prior to the lateral movement of the edge line rear box moving to the "in" position; and

f.  It fails to identify industry standards for the Subject Grinder Truck and whether it complies with those standards.

28.    The Owner's Manual chapter on the timing system was purportedly prepared by Skip-Line and has numerous deficiencies, including but not limited to the following:

a)  It contains no information as to assembly, wiring, programming, configuration or control components, and does not identify the manufacturers, if any, of such components;

b)  It identifies the timing system as a control system for both a GC-12 and SC-12 grinding system but does not provide further information;

c)  It states the "[s]ystem will not work reliably unless both a rear and front hub are connected" but provides no information of observed incidents of unreliability and how the unreliability is exhibited, recognized, corrected or prevented;

d)  It states "[t]he IN and OUT controls allow manual adjustments to the left and right movement of the grinder boxes" and notes that "[t]hese can be adjusted individually or all together with the MOVE ALL switch" but provides no information as to the number, location and configuration of the master box switches for the Subject

8

Grinder Truck;

e) It lacks important details including but not limited to: hydraulic schematic drawings that show the lateral movement cylinders and hydraulic manifold valves that control the lateral movement of the boxes; hydraulic pump specifications; specifications of hydraulic manifold and valves that control the edge line In/Out box movement; the identity of the manufacturer of the hydraulic manifold and valves that control the edge line In/Out box movement; and the model number of the hydraulic manifold and valves that control the edge line In/Out box movement;

f) It fails to identify industry standards for the Subject Timing System and whether it complies with those standards; and

g) It contains no warnings regarding failures of the system due to radio frequency, water/moisture penetration, or other dangerous conditions.

## FACTS

29.     On July 26, 2018, Decedent Barton was performing maintenance on the grinder heads of the Subject Grinder Truck at one of the garage bays at Kolbe's Topeka Way facility. Grinder heads weigh over 300 pounds and cannot be moved by hand. It is thus necessary that the Grinder Truck's John Deere power plant be running so that grinder boxes can be moved and positioned over grinder heads in order for the heads to be properly configured.

30.     Sometime shortly before 5:45 p.m., Decedent Barton ascended a ladder set beside the rear operator station on the passenger side of the Subject Grinder Truck and used the controls located there to raise the rear grinder box several inches above a grinder head he had positioned on the floor beneath the rear box. Once Decedent Barton had the box positioned over the grinder head, he descended the ladder. At that time, there was no movement in any of the edge line grinder

boxes along the passenger side of the Subject Grinder Truck.

31.    Decedent Barton checked several areas of the rear grinder box, then leaned inside the open rear edge line grinder box to further inspect its position over the grinder head. At this point there had still been no movement in any of the edge line grinder boxes along the passenger side of the Subject Grinder Truck.

32.    As Decedent Barton leaned into the opening, the rear edge line grinder box closed without warning, pinning Decedent Barton's torso between the passenger side rear and center grinder boxes.

33.    The rear grinder box slowed to a near standstill as it made contact with Decedent Barton's torso, then moved forcefully to the fully retracted "in" position. Decedent Barton screamed and kicked his left leg in the air, but as the box gained pressure to overcome the resistance from his torso, his leg dropped to the ground and Decedent Barton made no further discernable movement.

34.    Greg Dinwiddie, a Kolbe employee reportedly heard Decedent Barton scream and walked into the garage bay where Decedent Barton was working on the Subject Grinder Truck. When Dinwiddie came into the garage bay he saw Decedent Barton's body with his torso pinned between the rear edge line grinder box and the center grinder box.

35.    Dinwiddie mounted the ladder at the rear of the Subject Grinder Truck and moved the center box into the "out" position. Dinwiddie then dismounted the ladder. At this point in time, while Dinwiddie was not touching any part of the Subject Grinder Truck, the center grinder box closed. Thereafter, the grinder boxes pinning Decedent Barton once again moved without operator or user input, jerking Decedent Barton's body violently from side to side.

36.    Dinwiddie was thereafter unable to release the grinder boxes from trapping

10

Decedent Barton and he called 911 to report the incident. Dinwiddie informed the dispatcher that he could not tell whether Decedent Barton was alive or dead.

37.    Castle Rock Fire Department and Castle Rock Police Department responded to the 911 dispatch. When they arrived at 5:46 p.m. they observed the Subject Grinder Truck situated in one of the garage bays and Decedent Barton's body trapped between the rear grinder box and the center grinder box.

38.    Fire Department personnel determined that Decedent Barton was beyond life-saving measures. Coroner Lobello arrived at the Kolbe Topeka Way facility at 7:23 p.m. to inspect Decedent Barton's body and determined that the time of death was 6:05 p.m.

39.    Officer Joshua Parker from the Castle Rock Police Department observed two surveillance cameras on the east and west sides of the garage that would have recorded the incident. Officer Parker requested video from the cameras but was told that they would not have recorded the accident since they were not working that day. In fact, the cameras did record the accident and Officer Parker was given false information by Kolbe.

40.    The Douglas County Coroner performed an autopsy on Colin Barton on July 30, 2018. The autopsy diagnoses included:

     a.  Thorax injuries:
          i.  Sternum fracture
          ii.  Multiple rib fracture
          iii.  Pulmonary contusions
          iv.  Right upper lobe pulmonary laceration
          v.  Hemothoraces (500 cc right; 100 cc left)

     b.  Abdominal injuries:
          i.  Bilateral hemidiaphragm lacerations
          ii.  Complete transection of liver - right lobe
          iii.  Multiple liver lacerations

    iv.  Multiple liver contusions

    v.  Complete transection of the abdominal aorta

    vi.  Complete transection of the duodenum

    vii.  Complete transection of the pancreas

    viii.  Multiple kidney lacerations - right

    ix.  Complete transection of the kidney - left

    x.  Complete transection of the adrenal gland - right

    xi.  Complete transection of the vertebral column at the level of T10

    xii.  Hemoperitoneum (200 cc)

  c.  Multiple cutaneous abrasions, bruises and compression marks

## COUNT I
## NEGLIGENCE AGAINST THE GRINDER TRUCK DEFENDANTS

41.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

42.    At all relevant times, the Grinder Truck Defendants had a duty to exercise reasonable care, and to comply with the existing standards of care, in their design, manufacture, and sale of the grinder trucks and timing systems, such as the Subject Grinder Truck and the Subject Timing System, which the Defendants introduced into the stream of commerce, including a duty to ensure that users would not suffer from unreasonable or dangerous risk during the normal and expected use of the grinder truck and timing system, including during servicing and maintenance of the grinder truck.

43.    At all relevant times, the Grinder Truck Defendants had a duty to properly warn users and consumers of the risks and dangers presented by the Subject Grinder Truck and Subject Timing System during the normal and expected use of the grinder truck and timing system, including during servicing and maintenance, and of reasonable means to reduce such risks, dangers and harms.

44.     The Grinder Truck Defendants negligently designed, manufactured, and sold the Subject Grinder Truck and Subject Timing System, in that they failed to exercise reasonable care to prevent the Subject Grinder Truck, Subject Timing System, and their components from creating an unreasonable risk of harm to a person who might reasonably be expected to use them in an expected or reasonably foreseeable manner. The Grinder Truck Defendants thereby breached their various duties set forth in this Count.

45.     At all relevant times, the Grinder Truck Defendants knew or reasonably should have known that the Subject Grinder Truck and the Subject Timing System were unreasonably dangerous and defective when used as designed, directed and sold, including but not limited to the following acts of negligence:

        a.   The Grinder Truck Defendants engaged in inadequate testing and/or inadequate reporting of any testing of the Subject Grinder Truck, the Subject Timing System, and their component parts.

        b.   The Grinder Truck Defendants failed to conduct and/or adequately report the results of tests and studies necessary to determine that the ordinary and foreseeable use of the Subject Grinder Truck and Subject Timing System created an unreasonable risk of injury, particularly when grinder boxes are being inspected, serviced, repaired, or maintained.

        c.   The Grinder Truck Defendants failed to design, manufacture, and sell the Subject Grinder Truck with safety features that would provide reasonable protections to users and that would prevent crushing injuries to a user due to unintended movement of the grinder boxes.

d. The Grinder Truck Defendants failed to design, manufacture, and sell the Subject Grinder Truck with a sufficiently safe Subject Timing System that would provide reasonable protections to users and that would prevent unintended movement of the grinder boxes.

e. The Grinder Truck Defendants designed and manufactured the Subject Grinder Truck and Subject Timing System in a way that allowed grinder boxes to move to the "in" or to the "out" positions without input from a user or operator.

f. The Grinder Truck Defendants designed and manufactured the Subject Timing System such that it was unreasonably susceptible to water intrusion and/or water damage that would result in an override of the "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

g. The Grinder Truck Defendants designed and manufactured the Subject Timing System such that it was unreasonably susceptible to radio frequencies and/or other electric noise that would override "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

h. The Grinder Truck Defendants failed to make the inspection area for the edge line grinder boxes of such size and configuration as to prevent a user, such as Decedent Barton, from becoming trapped and crushed between the grinder boxes and/or the truck frame. As designed, the inspection area between the edge line grinder box and the truck frame was the only feasible means for a user such as Decedent Barton to inspect, test, repair or maintain edge line grinder boxes. Specifically, the inspection area is designed large enough for a user to position his body between the

14

grinder boxes, and in fact requires the user to do so in order to inspect valves and other mechanical components of the edge line grinder boxes;

i.  The Grinder Truck Defendants failed to equip the Subject Grinder Truck and Subject Timing System with mechanical and/or electrical lock-out(s) that would prevent power to the grinder boxes and/or prevent unintended movement of the grinder boxes while a user performed foreseeable servicing and maintenance of the grinder boxes.

j.  The Grinder Truck Defendants failed to design the Subject Grinder Truck to include alternative designs that would protect users, including during servicing and maintenance.  This includes but is not limited to incorporation of hydraulic shut-off valves, pressure sensors, reversing programs, safety bars or guards, delays and signals that sense movement and/or provide a warning signal to users, e-stops or other safety devices within reach of an operator that would allow the user to cut power to the grinder box, watertight and/or water resistant units to house the electronic components of the Subject Timing System, and/or other safety mechanisms that would prevent the grinder boxes from moving in an unintended manner and crushing a user.

k.  The Grinder Truck Defendants failed to design and/or direct that the Subject Timing System include alternative designs that would protect users, including during servicing and maintenance. This includes but is not limited to incorporation of watertight and/or water-resistant controller boxes and/or a safety programmable logic controller that would prevent radio frequencies and other electric noise from interfering with and/or overriding the electronic system.

15

l.  The Grinder Truck Defendants failed to design and/or direct that the Timing System, including but not limited to the on/off switch, be designed and/or configured in a way that eliminated the risk of power returning to the edge line grinder boxes without input from a user or operator.

m.  The Grinder Truck Defendants failed to properly integrate the Subject Timing System into the Subject Grinder Truck in such a way that would reasonably protect users, including during servicing and maintenance of the grinder boxes.

n.  The Grinder Truck Defendants failed to disclose to users the risk of extreme crush injuries, particularly when grinder boxes are being inspected, serviced, repaired or maintained.

o.  The Grinder Truck Defendants failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Grinder Truck and Subject Timing System, and reasonable means to reduce such risks, dangers and harms.  This includes, but is not limited to, warnings regarding moisture in the Subject Timing System, radio frequency and other electric noise interference with the Subject Timing System, and the crush hazard that existed between the edge line grinder boxes during inspection, troubleshooting, repair or maintenance of the grinder boxes.

p.  The Grinder Truck Defendants failed to provide adequate and sufficient instructions for the inspection, troubleshooting, repair or maintenance of the Subject Grinder Truck and/or the grinder boxes.

q.  The Grinder Truck Defendants failed to provide post-marketing warning or instruction after they knew or should have known of the risk of injury from the

Subject Grinder Truck and Subject Timing System. More specifically, adequate warnings were not provided to users such as Decedent Barton, and the product was continually promoted as safe and effective for use during normal, customary, and expected inspection, servicing, repair and maintenance operations.

The factual basis for the Grinder Truck Defendants' negligence is also further specified in Count II and incorporated herein.

46.     At the time of the design and manufacture of the Subject Grinder Truck and the Subject Timing System, the Grinder Truck Defendants knew, or in the exercise of reasonable care should have known, of the dangers of crushing hazards and/or unintended movement of the grinder boxes and of design characteristics necessary to assure that such products would provide reasonable protection to users, including during inspection, troubleshooting, repair, or maintenance of the grinder boxes. The Grinder Truck Defendants nonetheless failed to exercise ordinary care to design the Subject Grinder Truck and the Subject Timing System with sufficient safety features and warnings.

47.     At the time of the design and manufacture of the Subject Grinder Truck and the Subject Timing System, the Grinder Truck Defendants knew, or in the exercise of reasonable care, should have known, of alternative designs that were technologically and economically feasible and that would prevent crush injuries to users, including during inspection, troubleshooting, repair, or maintenance of the grinder boxes, but the Grinder Truck Defendants chose not to incorporate these alternative designs.

48.     The extreme risk of crush injury, including the loss of life as suffered by Decedent Barton, outweighed the possible benefits of the use of the Subject Grinder Truck and the Subject Timing System as they were defectively designed, manufactured, and sold.

49.     Based on what the Grinder Truck Defendants knew or reasonably should have known as described herein, the Grinder Truck Defendants deviated from principles of due care, deviated from the standard of care, and were otherwise negligent.

50.     At all relevant times and for the reasons stated herein, the Grinder Truck Defendants knew or reasonably should have known that the Subject Grinder Truck and Subject Timing System were each unreasonably dangerous and defective when used as designed, directed, and sold, including but not limited to the particulars described in this Complaint.

51.     The Grinder Truck Defendants breached the duties set forth herein, including but not limited to the duty to design and manufacture the Subject Grinder Truck and Subject Timing System to provide reasonable protection to their users.

52.     The Grinder Truck Defendants' negligent acts and omissions were a direct and proximate cause of the fatal injuries suffered by Decedent Barton and the economic and noneconomic damages suffered by Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton.

53.     The injuries suffered by Decedent Barton and the damages suffered by Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton were the reasonably foreseeable result of the Grinder Truck Defendants' negligence.

**COUNT II**
**STRICT PRODUCTS LIABILITY PURSUANT TO MONT. CODE ANN. § 27-1-719**
**AGAINST THE GRINDER TRUCK DEFENDANTS**

54.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

55.     At all times material to this action, the Grinder Truck Defendants were in the business of designing, manufacturing, and selling grinder trucks and timing systems, including the

18

Subject Grinder Truck and Subject Timing System, throughout the United States including Montana.

56.    At the time the Subject Grinder Truck and Subject Timing System left the control of the Grinder Truck Defendants they were defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use them.   These defects include, but are not limited to, the conditions described in the following subparagraphs:

a.  The Subject Grinder Truck and Subject Timing Systems were defective in their design, manufacture, and sale, in that they presented an unreasonable risk of injury and death to foreseeable users performing foreseeable servicing and maintenance of the grinder boxes.

b.  The Subject Grinder Truck failed to include safety features that would provide reasonable protections to users and that would prevent crush injuries to a user due to unintended movement of the grinder boxes.

c.  The Subject Timing System failed to include safety features that would provide reasonable protections to users and that would prevent unintended movement of the grinder boxes.

d.  The Subject Grinder Truck and Subject Timing System were defective in that they allowed grinder boxes to move to the "in" or to the "out" positions without input from a user or operator.

e.  The Subject Timing System was unreasonably susceptible to water intrusion and/or water damage that would result in an override of the "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

f.  The Subject Timing System was unreasonably susceptible to radio frequencies and/or other electric noise that would override "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

g.  The inspection area for the edge line grinder boxes of the Subject Grinder Truck were of such size and configuration as to allow a user, such as Decedent Barton, to become trapped and crushed between the grinder boxes and/or the truck frame. As designed, the inspection area between the edge line grinder box and the truck frame was the only feasible means for a user such as Decedent Barton to inspect, test, repair or maintain edge line grinder boxes. Specifically, the inspection area is designed large enough for a user to position his body between the grinder boxes, and in fact requires the user to do so in order to inspect valves and other mechanical components of the edge line grinder boxes.

h.  The Subject Grinder Truck and Subject Timing System were not equipped with mechanical and/or electrical lock-out(s) that would prevent power to the grinder boxes and/or prevent unintended movement of the grinder boxes while a user performed foreseeable servicing and maintenance of the grinder boxes.

i.  The Subject Grinder Truck lacked alternative designs that would protect users, including during servicing and maintenance. This includes but is not limited to a lack of hydraulic shut-off valves, pressure sensors, reversing programs, safety bars or guards, delays and signals that sense movement and/or provide a warning signal to users, e-stops or other safety devices within reach of an operator that would allow the user to cut power to the grinder box, watertight and/or water resistant units to

20

house the electronic components of the Subject Timing System, and/or other safety mechanisms that would prevent the grinder boxes from moving in an unintended manner and crushing a user.

j.  The Subject Timing System lacked alternative designs that would protect users, including during servicing and maintenance. This includes but is not limited to the lack of watertight and/or water-resistant controller boxes and/or a safety programmable logic controller that would prevent radio frequencies and other electric noise from interfering with and/or overriding the electronic system.

k.  The Subject Timing System, including but not limited to the on/off switch, was not designed and/or configured in a way that eliminated the risk of power returning to the edge line grinder boxes without input from a user or operator;

l.  The Subject Grinder Truck's design failed to safely integrate the Subject Timing System in such a way that would reasonably protect users, including during servicing and maintenance of the grinder boxes.

m. The Subject Grinder Truck lacked disclosures and/or warnings regarding the risk of extreme crush injuries, particularly when grinder boxes are being inspected, serviced, repaired or maintained.

n.  The Subject Grinder Truck and Subject Timing System lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Grinder Truck and Subject Timing System, and reasonable means to reduce such risks, dangers and harms. This includes, but is not limited to a lack of warnings regarding moisture in the Subject Timing System, radio frequency and other electric noise interference with the Subject Timing System, and the crush

21

hazard that existed between the edge line grinder boxes during inspection, troubleshooting, repair or maintenance of the grinder boxes.

o. The Subject Grinder Truck and Subject Timing System lacked adequate and sufficient instructions regarding the inspection, troubleshooting, repair or maintenance of the Subject Grinder Truck and/or the grinder boxes.

p. The Subject Grinder Truck and Subject Timing System were defective due to inadequate testing, studies or trials, and/or inadequate reporting regarding the results of such studies.

q. The Subject Grinder Truck and Subject Timing System lacked post-marketing warning or instruction after the Grinder Truck Defendants knew or should have known of the risk of injury from the Subject Grinder Truck and Subject Timing System.

57. The Grinder Truck Defendants placed the Subject Grinder Truck and Subject Timing System and their component parts into the stream of commerce in a defective and unreasonably dangerous condition such that they created an unreasonable risk of harm to users such as Decedent Barton, that would not ordinarily be expected by such users, including that the grinder boxes were subject to unintended movement without input from a user or operator.

58. The Subject Grinder Truck and Subject Timing System, which were designed, manufactured and sold by the Grinder Truck Defendants, were unreasonably and dangerously defective beyond the extent contemplated by ordinary persons with ordinary knowledge regarding these products.

59. The Subject Grinder Truck and Subject Timing System were expected by the Grinder Truck Defendants to reach, and did reach, the user without substantial change in the

22

condition in which they were sold.

60.    Decedent Barton was a person who would reasonably be expected to use the Subject Grinder Truck and Subject Timing System.  Decedent Barton is in the class of persons that the Grinder Truck Defendants should reasonably foresee as being subject to the harm caused by the defective Subject Grinder Truck and Subject Timing System.  Decedent Barton was the type of person and was engaged in the type of activity for whom the Subject Grinder Truck and Subject Timing System were intended to be used.

61.    The defects in the Subject Grinder Truck and Subject Timing System were a direct and proximate cause of the fatal injuries suffered by Decedent Barton and the economic and noneconomic damages suffered by Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton.

62.    The Grinder Truck Defendants are strictly liable to the Plaintiff for the injuries to Decedent Barton and for injuries and damages to Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton caused by defects and inadequacies in the design, manufacture, and sale of the Subject Grinder Truck and Subject Timing System.

## COUNT III
## BREACH OF WARRANTY AGAINST THE GRINDER TRUCK DEFENDANTS

63.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

64.    Express warranties, an implied warranty of fitness, an implied warranty of merchantability, and/or warranties of future performance existed with respect to the Subject Grinder Truck and Subject Timing System.

65.    The Grinder Truck Defendants are entities who design, assemble, produce, and otherwise prepare grinder trucks and timing systems, including the Subject Grinder Truck, Subject

Timing System, and their component parts, prior to sale to users and consumers.

66.    Decedent Barton is in the class of persons that the Grinder Truck Defendants should reasonably foresee as being subject to the harm caused by the defective Subject Grinder Truck and Subject Timing System. Decedent Barton was the type of person and was engaged in the type of activity for which the Subject Grinder Truck and Subject Timing System were intended to be used.

67.    The Grinder Truck Defendants sold and represented the Subject Grinder Truck and Subject Timing System as capable of performing normal and expected pavement grinding and/or lining operations and as being safe when operated, inspected, serviced, repaired, and maintained.

68.    At the time of the sale of the Subject Grinder Truck and Subject Timing System to Kolbe and their use by Decedent Barton, the Grinder Truck Defendants expressly warranted that the Subject Grinder Truck and Subject Timing System would be free from defects.

69.    The Grinder Truck Defendants breached the express warranty that the Subject Grinder Truck and Subject Timing System were capable of performing normal and expected pavement grinding and/or lining operations and of being safe when operated, inspected, serviced, repaired and maintained.

70.    The Grinder Truck Defendants knew or had reason to know the particular purposes for which the Subject Grinder Truck, Subject Timing System, and their components were required and were to be used and that purchasers and users, such as Colin Barton, would rely on the Grinder Truck Defendants' skill or judgment in designing, testing, manufacturing, and furnishing goods suitable for such purposes and uses.

71.    The Subject Grinder Truck, Subject Timing System, and their components were not fit for the particular purposes for which they were intended and for which they were used.

72.    At the time the Subject Grinder Truck, Subject Timing System, and their

components were designed, manufactured and sold, the Grinder Truck Defendants knew or reasonably should have known that they were not reasonably safe for the uses intended.

73.    At the time the Subject Grinder Truck, Subject Timing System, and their components were designed, manufactured and sold, the Grinder Truck Defendants knew or reasonably should have known that they posed unreasonable risks of injury to users, particularly to users inspecting, servicing, repairing, and/or maintaining such products.

74.    The Grinder Truck Defendants breached the implied warranty of fitness for a particular purpose because the Subject Grinder Truck and Subject Timing System were not capable of being safely inspected, serviced, repaired or maintained without the risk of crush injuries as a result of the unintended movement of the grinder boxes without input from a user or operator.

75.    At the time of the sale of the Subject Grinder Truck and Subject Timing System, the Grinder Truck Defendants impliedly warranted that the Subject Grinder Truck and Subject Timing System would be free from defects, were merchantable for the intended use in pavement grinding and/or lining, and that they would be safe when operated, inspected, serviced, repaired and maintained.

76.    The Grinder Truck Defendants breached the implied warranty of merchantability because the Subject Grinder Truck and Subject Timing System were not fit for the purposes for which they were used in that they were not capable of being safely inspected, serviced, repaired or maintained without the risk of crush injuries as a result of the unintended movement of the grinder boxes without input from a user or operator.

77.    The Subject Grinder Truck and Subject Timing System did not conform to the warranties, affirmations, and representations made by the Grinder Truck Defendants.

78.    The Plaintiff, the heirs of Colin Barton, and their decedent were third-party

beneficiaries of express and/or implied warranties, including but not limited to warranties of future performance, made by the Grinder Truck Defendants to others.

79.     As a direct and proximate cause of the breach of the express and implied warranties as set forth herein, Decedent Barton suffered a fatal crush injury and Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton suffered economic and noneconomic damages as described herein.

## COUNT IV
## NEGLIGENCE AGAINST THE TIMING SYSTEM DEFENDANTS

80.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

81.     At all relevant times, the Timing System Defendants had a duty to exercise reasonable care, and to comply with the existing standards of care, in their design, manufacture, and sale of the timing systems, such as the Subject Timing System, which the Defendants introduced into the stream of commerce, including a duty to ensure that users would not suffer from unreasonable or dangerous risk during the normal and expected use of the timing system, including during servicing and maintenance operations.

82.     At all relevant times, the Timing System Defendants had a duty to properly warn users and consumers of the risks and dangers presented by the Subject Timing System during the normal and expected use of the timing system, including during servicing and maintenance, and of reasonable means to reduce such risks, dangers and harms.

83.     The Timing System Defendants negligently designed, manufactured, and sold the Subject Timing System, in that they failed to exercise reasonable care to prevent the Subject Timing System and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner. The

Timing System Defendants thereby breached their various duties set forth in this Count.

84.     At all relevant times, the Timing System Defendants knew or reasonably should have known that the Subject Timing System was unreasonably dangerous and defective when used as designed, directed and sold, including but not limited to the following acts of negligence:

a.   The Timing System Defendants engaged in inadequate testing and/or inadequate reporting of any testing of the Subject Timing System and its component parts.

b.   The Timing System Defendants failed to conduct and/or adequately report the results of tests and studies necessary to determine that the ordinary and foreseeable use of the Subject Timing System created an unreasonable risk of injury, particularly when grinder boxes are being inspected, serviced, repaired, or maintained.

c.   The Timing System Defendants failed to design, manufacture, and sell a sufficiently safe Subject Timing System that would provide reasonable protections to users and that would prevent unintended movement of the grinder boxes.

d.   The Timing System Defendants designed and manufactured the Subject Timing System in a way that allowed grinder boxes to move to the "in" or to the "out" positions without input from a user or operator.

e.   The Timing System Defendants designed and manufactured the Subject Timing System such that it was unreasonably susceptible to water intrusion and/or water damage that would result in an override of the "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

f.  The Timing System Defendants designed and manufactured the Subject Timing System such that it was unreasonably susceptible to radio frequencies and/or other electric noise that would override "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

g.  The Timing System Defendants failed to equip the Subject Timing System with mechanical and/or electrical lock-out(s) that would prevent power to the grinder boxes and/or prevent unintended movement of the grinder boxes while a user performed foreseeable servicing and maintenance of the grinder boxes.

h.  The Timing System Defendants failed to design the Subject Timing System to include alternative designs that would protect users, including during servicing and maintenance. This includes but is not limited to incorporation of watertight and/or water resistant controller boxes, a safety programmable logic controller that would prevent radio frequencies and other electric noise from interfering with and/or overriding the electronic system, reversing programs, delays and signals that sense movement and/or provide a warning signal to users, e-stops or other safety devices within reach of an operator that would allow the user to cut power to the grinder box, and/or other safety mechanisms that would prevent the grinder boxes from moving in an unintended manner and crushing a user.

i.  The Timing System Defendants failed to design the Timing System, including but not limited to the on/off switch, in a way that eliminated the risk of power returning to the edge line grinder boxes without input from a user or operator;

j.  The Timing System Defendants failed to properly direct and/or warn Arrow on integration of the Subject Timing System into the Subject Grinder Truck in such a

28

way that would reasonably protect users, including during servicing and maintenance of the grinder boxes.

k.  The Timing System Defendants failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Timing System, and reasonable means to reduce such risks, dangers and harms. This includes, but is not limited to, warnings regarding moisture in the Subject Timing System and radio frequency and other electric noise interference with the Subject Timing System.

l.  The Timing System Defendants failed to provide post-marketing warning or instruction after they knew or should have known of the risk of injury from the Subject Timing System. More specifically, adequate warnings were not provided to users such as Decedent Barton, and the product was continually promoted as safe and effective for use during normal, customary, and expected inspection, servicing, repair, and maintenance operations.

The factual basis for the Timing System Defendants' negligence is also further specified in Count V and incorporated herein.

85.    At the time of the design and manufacture of the Subject Timing System, the Timing System Defendants knew, or in the exercise of reasonable care should have known, of the dangers of crushing hazards and/or unintended movement of the grinder boxes and of design characteristics necessary to assure that its products would provide reasonable protection to users, including during inspection, troubleshooting, repair, or maintenance of the grinder boxes. The Timing System Defendants nonetheless failed to exercise ordinary care to design the Subject Timing System with sufficient safety features and warnings.

86.     At the time of the design and manufacture of the Subject Timing System, the Timing System Defendants knew, or in the exercise of reasonable care, should have known, of alternative designs that were technologically and economically feasible and that would prevent crush injuries to users, including during inspection, troubleshooting, repair or maintenance of the grinder boxes, but the Timing System Defendants chose not to incorporate these alternative designs.

87.     The extreme risk of crush injury, including the loss of life as suffered by Decedent Barton, outweighed the possible benefits of the use of the Subject Timing System as they were defectively designed, manufactured, and sold.

88.     Based on what the Timing System Defendants knew or reasonably should have known as described herein, the Timing System Defendants deviated from principles of due care, deviated from the standard of care, and were otherwise negligent.

89.     At all relevant times and for the reasons stated herein, the Timing System Defendants knew or reasonably should have known that the Subject Timing System was unreasonably dangerous and defective when used as designed, directed, and sold, including but not limited to the particulars described in this Complaint.

90.     The Timing System Defendants breached the duties set forth herein, including but not limited to the duty to design and manufacture the Subject Timing System to provide reasonable protection to its users.

91.     The Timing System Defendants' negligent acts and omissions were a direct and proximate cause of the fatal injuries suffered by Decedent Barton and the economic and noneconomic damages suffered by Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton.

30

92.    The injuries suffered by Decedent Barton and the damages suffered by Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton were the reasonably foreseeable result of the Timing System Defendants' negligence.

## COUNT V
### STRICT PRODUCTS LIABILITY PURSUANT TO M.C.A. § 27-1-719
### AGAINST THE TIMING SYSTEM DEFENDANTS

93.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

94.    At all times material to this action, the Timing System Defendants were in the business of designing, manufacturing, and selling timing systems, including the Subject Timing System, throughout the United States including Montana.

95.    At the time the Subject Timing System left the control of the Timing System Defendants it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following subparagraphs:

    a.    The Subject Timing Systems was defective in its design, manufacture, and sale, in that it presented an unreasonable risk of injury and death to foreseeable users performing foreseeable servicing and maintenance of the grinder boxes.

    b.    The Subject Timing System failed to include safety features that would provide reasonable protections to users and that would prevent unintended movement of the grinder boxes.

    c.    The Subject Timing System was defective in that it allowed grinder boxes to move to the "in" or to the "out" positions without input from a user or operator.

    d.    The Subject Timing System was unreasonably susceptible to water intrusion and/or

water damage that would result in an override of the "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

e.  The Subject Timing System was unreasonably susceptible to radio frequencies and/or other electric noise that would override "in" and "out" program controls and/or allow unintended movement of the grinder boxes without input from a user or operator.

f.  The Subject Timing System was not equipped with mechanical and/or electrical lock-out(s) that would prevent power to the grinder boxes and/or prevent unintended movement of the grinder boxes while a user performed foreseeable servicing and maintenance of the grinder boxes.

g.  The Subject Timing System lacked alternative designs that would protect users, including during servicing and maintenance. This includes but is not limited to incorporation of watertight and/or water resistant controller boxes, a safety programmable logic controller that would prevent radio frequencies and other electric noise from interfering with and/or overriding the electronic system, reversing programs, delays and signals that sense movement and/or provide a warning signal to users, e-stops or other safety devices within reach of an operator that would allow the user to cut power to the grinder box, and/or other safety mechanisms that would prevent the grinder from moving in an unintended manner and crushing a user.

h.  The Subject Timing System, including but not limited to the on/off switch, was not designed and/or configured in a way that eliminated the risk of power returning to

the edge line grinder boxes without input from a user or operator;

i.    The Subject Timing System lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Timing System, and reasonable means to reduce such risks, dangers and harms. This includes but is not limited to a lack of warnings regarding moisture in the Subject Timing System and radio frequency and other electric noise interference with the Subject Timing System.

j.    The Subject Timing System lacked adequate and sufficient instructions regarding the inspection, troubleshooting, repair or maintenance of the Subject Timing System.

k.    The Subject Timing System was defective due to inadequate testing, studies or trials, and/or inadequate reporting regarding the results of such studies.

l.    The Subject Timing System lacked post-marketing warning or instruction after the Timing System Defendants knew or should have known of the risk of injury from the Subject Timing System.

96.    The Timing System Defendants placed the Subject Timing System and its component parts into the stream of commerce in a defective and unreasonably dangerous condition such that it created an unreasonable risk of harm to users such as Decedent Barton, that would not ordinarily be expected by such users, including that the grinder boxes were subject to unintended movement without input from a user or operator.

97.    The Subject Timing System, which was designed, manufactured and sold by the Timing System Defendants, was unreasonably and dangerously defective beyond the extent contemplated by ordinary persons with ordinary knowledge regarding this product.

98.    The Subject Timing System was expected by the Timing System Defendants to reach, and did reach, the user without substantial change in the condition in which it was sold.

99.    Decedent Barton was a person who would reasonably be expected to use the Subject Timing System. Decedent Barton is in the class of persons that the Timing System Defendants should reasonably foresee as being subject to the harm caused by the defective Subject Timing System. Decedent Barton was the type of person and was engaged in the type of activity for whom the Subject Timing System was intended to be used.

100.   The defects in the Subject Timing System was a direct and proximate cause of the fatal injuries suffered by Decedent Barton and the economic and noneconomic damages suffered by Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton.

101.   The Timing System Defendants are strictly liable to the Plaintiff for the injuries to Decedent Barton and for injuries and damages to Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton caused by defects and inadequacies in the design, manufacture, and sale of the Subject Timing System.

**COUNT VI**
**BREACH OF WARRANTY AGAINST THE TIMING SYSTEM DEFENDANTS**

102.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

103.   Express warranties, an implied warranty of fitness, an implied warranty of merchantability, and/or warranties of future performance existed with respect to the Subject Timing System.

104.   The Timing System Defendants are entities who design, assemble, produce and otherwise prepare timing systems, including the Subject Timing System and its component parts, prior to sale to users and consumers.

105.   Decedent Barton is in the class of persons that the Timing System Defendants should reasonably foresee as being subject to the harm caused by the defective Subject Timing System. Decedent Barton was the type of person and was engaged in the type of activity for which the Subject Timing System was intended to be used.

106.   The Timing System Defendants sold and represented the Subject Timing System as capable of performing normal and expected pavement grinding and/or lining operations and as being safe when operated, inspected, serviced, repaired, and maintained.

107.   At the time of the sale of the Subject Timing System to Arrow and its later use by Decedent Barton, the Timing System Defendants expressly warranted that the Subject Timing System would be free from defects.

108.   The Timing System Defendants breached the express warranty that the Subject Timing System was capable of performing normal and expected pavement grinding and/or lining operations and of being safe when operated, inspected, serviced, repaired and maintained.

109.   The Timing System Defendants knew or had reason to know the particular purposes for which the Subject Timing System and its components were required and were to be used and that purchasers and users, such as Colin Barton, would rely on the Timing System Defendants' skill or judgment in designing, testing, manufacturing, and furnishing goods suitable for such purposes and uses.

110.   The Subject Timing System and its components were not fit for the particular purposes for which they were intended and for which they were used.

111.   At the time the Subject Timing System and its components were designed, manufactured and sold, the Timing System Defendants knew or reasonably should have known that they were not reasonably safe for the uses intended.

112.    At the time the Subject Timing System and its components were designed, manufactured and sold, the Timing System Defendants knew or reasonably should have known that it posed unreasonable risks of injury to users, particularly to users inspecting, servicing, repairing, and/or maintaining such product.

113.    The Timing System Defendants breached the implied warranty of fitness for a particular purpose because the Subject Timing System was not capable of being safely inspected, serviced, repaired or maintained without the risk of crush injuries as a result of the unintended movement of the grinder boxes without input from a user or operator.

114.    At the time of the sale of the Subject Timing System, the Timing System Defendants impliedly warranted that the Subject Timing System would be free from defects and was merchantable for the intended use in pavement grinding and/or lining and that it would be safe when operated, inspected, serviced, repaired, and maintained.

115.    The Timing System Defendants breached the implied warranty of merchantability because the Subject Timing System was not fit for the purposes for which it was used in that it was not capable of being safely inspected, serviced, repaired, or maintained without the risk of crush injuries as a result of the unintended movement of the grinder boxes without input from a user or operator.

116.    The Subject Timing System did not conform to the warranties, affirmations, and representations made by the Timing System Defendants.

117.    The Plaintiff, the heirs of Colin Barton, and their decedent were third-party beneficiaries of express and/or implied warranties, including but not limited to warranties of future performance, made by the Timing System Defendants to others.

118.    As a direct and proximate cause of the breach of the express and implied warranties

36

as set forth herein, Decedent Barton suffered a fatal crush injury and Plaintiff, the heirs of Colin Barton, and the Estate of Colin Barton suffered economic and noneconomic damages as described herein.

## DAMAGES

119.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

120.    As a direct and proximate result of the acts and omissions of one or more of the Defendants set forth herein, Plaintiff, the heirs of Colin Barton, their decedent, and the Estate of Colin Barton incurred and seek the following general and special damages.

121.    Survival Cause of Action. As a direct and proximate legal result of the foregoing events, the defective products, and the wrongful acts and conduct of the Defendants, Colin Barton suffered serious injuries and died. Said injuries resulted in damages to him and his estate, both prior to and after his death, including mental and physical pain and suffering, lost wages and loss of earning capacity, loss and destruction of his established course of life, and funeral and burial expenses, each for which this survival action is brought on behalf of the Estate of Colin Barton.

122.    Wrongful Death Cause of Action. At the time of his death, Colin Barton left his surviving wife, Jennifer Barton, and their minor children, J.B and P.B. As a direct and proximate legal result of the foregoing events, the defective products, and the wrongful acts and conduct of the Defendants, they each suffered serious damages resulting from Colin Barton's death, in both the past and in the future, including damages for mental anguish and for the loss to Jennifer Barton, J.B. and P.B. for their husband's and father's counsel, protection, aid, guidance, comfort, society, and support, each for which this wrongful death action is now brought on their behalf.

37

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against each of the Defendants for all damages allowed by law to be fixed by the trier of fact in a reasonable amount, together with costs of this suit, pre-judgment and post-judgment interest, costs and expert witness fees, any other losses and damages to which Plaintiff, the heirs of Colin Barton, their decedent, and the Estate of Colin Barton are entitled either pursuant to statute or the common law, and for all such other and further relief to which Plaintiff, the heirs of Colin Barton, their decedent, and the Estate of Colin Barton may be justly entitled and which the Court may deem proper, including but not limited to:

1. All damages, special and general, recoverable under Montana law, including but not limited to all economic and non-economic damages, survival damages, and wrongful death damages, each in a reasonable sum to be proven at trial;

2. All recoverable costs as allowed by law;

3. Pre-judgment and post-judgment interest on Plaintiff's damages as allowed by law; and

4. Such other relief as may be just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

//

//

//

//

Respectfully submitted this 24th day of March 2020.

VARELA LAW FIRM PLLC

Elizabeth Varela, *Attorney for Plaintiff*

Jason Jordan, *Pro Hac Vice to be filed*
Anne M. Dieruf, *Pro Hac Vice to be filed*
**JORDAN HERINGTON & ROWLEY**

Thomas E. Napp, *Pro Hac Vice to be filed*
**THOMAS E. NAPP, P.C.**

Colin Earl, *Pro Hac Vice to be filed*
**EARL & EARL, P.C.**

***Attorneys for The Estate of Colin Barton, Jennifer Barton, J.B. and P.B.***